Your Honor, it's the 13th case of the morning. Call 211, 1024 Joseph Johnson v. Niew Legal Partners. Thank you. I'm Catherine. I'm a newbie. On behalf of the appellant, Mr. T. Patrick Rice. On behalf of the appellee, Ms. Rebecca Lawton. The court says we're ready to proceed. Yes, Your Honor. You may proceed when you are ready. Please support. My name is Patrick Rice, and I represent the plaintiff appellant. The only issue before the court is the four corners of the complaint, and whether it's stated the cause of action for professional negligence, i.e. legal malpractice. This isn't a claim such as the defense has tried to frame in the trial court as far as insurance producer liability or any other type of issue. It's strictly rather that that complaint alleges professional negligence. All we have to do is set forth the ultimate facts. That's as indicated in McLean v. Landry, Landry scoring Anne Adkins v. Sarah Bush, the Supreme Court case. Ultimate facts, not argumentative facts or undue amount of facts in that regard. And we've done that. There's a fiduciary relationship relative to an attorney and a client in any situation where the attorney has been retained. There's an attorney-client relationship which requires that the attorney exercise yet most in good faith and fair dealing in any transaction, any transaction arising, arising, arising out of that legal relationship with the client. That's actually quoted from the defendant's brief, not my brief. As far as breach of duty, the plaintiff alleges that under the guise of legal advice, the defendant convinced him to use his finances and purchase insurance policies from her, then convinced him to purchase another, a second insurance policy, a different policy. Each time the defendant did not disclose that she was going to gain financially from the sales, that she had a personal interest as an agent for the insurance carriers.  If you look at, once again, I remind the Court to focus on the second minute complaint in just the four corners. There's seven allegations of breaches. I have a question. Which part of her legal practice is covered by this transaction? Whether it be estate planning or anything when she is retained as a personal attorney for the plaintiff, Mr. Johnson. As we alleged in the complaint, she had been acting as an attorney for Mr. Johnson, handling his personal matters for years and continued to do so. Whether it be just as a personal attorney or as estate planning, which is what this was a part of. Do we have an engagement agreement somewhere relating to this estate planning? I do not believe there was a separate agreement relative to the estate planning, but there was an attorney-client relationship that's not refuted in that regard, and it is an ultimate fact alleged in the four corners of the complaint. Isn't there today, though, at the time of this transaction, a preference established by courts, as well as the rules that there be a specific engagement agreement that identifies the scope of the work? I certainly believe that's true. I absolutely believe that's true, especially in the current environment. But at the same time, that duty is upon the attorney to present the attorney-client engagement letter for the protection of the attorney, quite frankly, in addition to the client. But I do absolutely agree with you that that's the preference in current practice and should be set forth. I'm not aware of a specific rule that says that at the current time, though. As far as date, yes, sir. A complaint has to set forth facts sufficient to bring the complaint within a recognized cause of action. Agreed. When we're talking about specifically the sales of these insurance and annuities and things like that, the facts that I'm looking at alleged to bring that transaction into this attorney-client relationship, I see two, under the guise of legal advice and then related to the second transaction, still acting as plaintiff's personal attorney relative to financial matters. How are these not mere conclusions as opposed to facts? Well, first of all, they are facts, and we think ultimate facts. And bluntly, anticipating that question, that's why I cited to you the Kling v. Landry case, which bluntly was mine before this Court, Skorik and the Supreme Court case of Adkins v. Sarah Bush. It literally says in those cases that, and Skorik was a legal malpractice case, all right, which said we only need to bring forth the ultimate facts that would be determined. Ultimate facts, not argumentative facts, not evidentiary facts at the time of trial. I think I'm answering your questions. We don't have the burden to bring forth specific facts in a professional negligence claim such as you would in a misrepresentation allegation. We all know you have to be very specific in misrepresentation and fraud and things like that. That's not the burden here. The analogy is, quite frankly, is medical malpractice. The only difference between this and a medical malpractice claim is you have to have an affidavit in a medical malpractice claim or an auto case. You just state the duty, it's the duty to drive carefully, breach, failure to yield, damages, approximate cause. That's the only thing required in Illinois on a legal malpractice case, to state the ultimate facts, and as the case ultimately cited before you, the ultimate facts will prove was there breach and approximate cause. That's all that's required. It's nothing more specific, and I have to stress that because it's not misrepresentation. Misrepresentation would require a great deal more. That's not what we're here for. So you can simply say there was legal advice given, period. I don't know if I can say that short, that stretching it, all right, but to say that she had an attorney-client relationship and was representing him in an attorney-client manner and then went ahead and gained financially. And when you say there was an attorney-client relationship, that is enough without setting forth any facts to establish that that relationship was in effect at the time? At the time. I believe that's true. I believe that's true. And I don't believe that's refuted. I don't believe that issue has been raised by the defense in this matter. I think it's clear there had been an attorney-client relationship and it had been ongoing for these years. And then if you recall from the complaint, I even said that he did not, the plaintiff did not learn of the discrepancies, the conflicts between the attorney-client representation and the financial gain of the defendant until November of 9 when the alliance, the second insurance policy was rendered, in other words was sold to him by the defendant. But once you say there's an attorney-client agreement and that's under duty, that's under Doe versus Rowe and the case law. This is what I'm driving at is if an attorney represents you on maybe three or four matters over 20 years, is every day and week in that 20-year period covered by a fiduciary responsibility? Absolutely not. Unless you do have that continual relationship, you don't know what it is. I agree with you on that proposition. But I think that gets to the heart of the matter of what Justice Hutchinson asked me, should there be a contract for each and every time? If you have separate occasions or events or separate different events. Before we establish there is no contract here. I don't believe there is a contract here. Okay. So let's leave that out of the answer to your question. Does the attorney-client relationship exist for every day and week of that 20 years? Once the client goes back to that attorney and seeks legal advice, there is an attorney-client relationship. I'm not trying to be vague with you, Your Honor, but let's say I don't see somebody for two years. Yeah. And they have me before. Am I their attorney in that two-year period where they don't come back and I haven't had anything to do? I'd say no, to be very honest with you. But they come back and ask you about something different. How is the sale of insurance related to legal services? They wouldn't have come back, number one, had you not been their attorney before, number one. And number two, the allegations in the complaint say under the guise of legal advice. But that's somewhat like chicken and egg arguments. Not if it's not alleged. If I just said you came back, which is what your hypothetical is to me, if you just came back, then I agree with you until there's a retained agreement. Right. But he comes back and he doesn't ask for legal advice. He asks for advice about buying an insurance policy. You're going beyond the complaint that we believe he's asking for estate-type planning legal advice, and she goes back and then sells him an insurance policy. What you're arguing is not in the complaint, which is what I'm trying to confine myself to. Under the guise of legal advice, she sells him the insurance policy. That's the basis. All right. Maybe then, if I may, Justice Jurgensen, ask this question. Sure. We're trying to give notice to the other side what the issue is. Under the guise of legal advice, it's a conclusion. Why didn't you tell us under what circumstances this was legal advice? Not specifically, but give us some idea. I don't think I have to do that in a straight professional negligence case when, if you think about it, the essential facts involved here would be better known by the defense, the attorney. We have to say he first learned she profited from this under the guise of legal advice when she sold him a policy. She sold him a policy, and I know you read my language in the trial court about it's a rope-a-dope routine. I know you read that. And that's basically what we're alleging. If there is a potential conflict, a potential conflict, to me, under basic law school ethics courses, that attorney has a duty and obligation to disclose that potential conflict if that person comes back to them when they're there at the attorney's office. And it's not disclosed here. But that's a little – I mean, legal advice and identifying some insurance policies, how is legal advice related to insurance policies? Well, it should be. I mean, it should be. But that's what's happening here. That is what happened. That's what the complaint says happened. That is what happened here. So how are – I mean, I don't – I'm trying to grab – I'm trying to pull that string out and attach them. If I sit there and I look at a client, and I think the court's very well aware that 95% of my business is personal injury work, and I sit there and try and settle a case, and I look before settlement, I look at my client, you know, I own a company down the road I'd like you to invest in. I have to do something separate in that regard. They're still under my legal advice, but not for that second transaction. All right? And that's really their argument, saying what was insurance. Well, if it is, you've got to tell them. You have to have a written disclosure in that regard. That's not here. We can – any attorney who's been around a while can sit there and play games and say, well, you know, I stopped representing you here. I didn't tell you. I didn't tell you. But now I'm going to say an insurance policy over here. As I put in the brief, when does that hat come off? When does the attorney hat come off, and when does the insurance policy hat come off? Well, I think what we're saying is you have to tell us when the hat is on in your complaint. I can't say when you don't know, but it's under the guise of legal advice. That's my point. If you come in for estate planning, when does an individual who's not an attorney or is not an insurance person actually know when they come into that attorney's office, when does it stop, especially under estate planning? When does it stop being estate planning and become sales? I don't think – I'm not so sure the common person on the streets of Lansing on the street knows that. In your complaint, I don't recall you saying that this was estate planning. I did not say that. I said it under the guise of legal advice because it had been legal advice, general legal advice, through the years, which you asked me earlier. General legal advice. So then we're back to I'm giving you legal advice over 20 years. I have an obligation to disclose to you every potential conflict and potential violation of a fiduciary duty, even when I think I'm not really rendering legal services. You came to me and said, do you want to buy – maybe I'm going to buy an insurance policy. Okay, here you go. I can sell you an insurance policy. If you disclose that you're making a profit on it and that it's a separate business, yes, if you tell them. There is a higher duty. Why would I have to do – if I were an insurance agent, I wouldn't have to tell you anything. Because you're not an attorney and you didn't represent them before. What if I'm an attorney and I'm also an insurance agent? Did you do work for them before in estate planning or sales or real estate? My question is how long is before? I don't think that's clear cut. I think that goes to the duty of the attorney to advise. But it would assume that it would go to your duty to allege. You know, in other words, you're trying to say to us, if I simply say all of these things happen under the major umbrella or the guise of legal services, and your position is, if I'm understanding, is that I don't have to tell you anything else. I can just say, guise of legal insurance – sorry, I'm sorry. Guise of legal advice. I understand. I then have this obligation to tell you, well, there's maybe the fiduciary issues. If you buy this insurance policy through me, I may have some personal gain. Without having to allege when those prior dealings took place, what causes you and I to have this attorney-client relationship at the time of the sale of the insurance policy? I don't think you have to do that under a professional negligence claim when you have the discovery rule. I'm not trying to diffuse the two, but we put down here he didn't learn – the plaintiff did not learn of these things until November of 2009. He didn't learn of the fiduciary claims. Right. But even if he learns about it the next day, he has to say when there were legal services being rendered, therefore, to generate an attorney-client privilege. I think we've done that by alleging in paragraph 13 the Allianz policy, and he didn't learn until he withdrew the funds. In paragraph 13, we literally sit down saying he didn't know until he withdrew the funds that there had been that potential claim. Now, when that Allianz policy was sold, I don't think I did put down the specific date. I did say it was sold, but frankly, I don't think I put down the date it was sold. Well, it's not necessarily the date, but at that time, there was, in fact, the existence of an attorney-client relationship. That's right, and I've said throughout. The complaint says throughout the relationship, there was an attorney-client relationship. Throughout their dealings, there was.  Thank you. Good morning. May it please the court. Rebecca Rothman on behalf of the defendant at police. We obviously think this court should affirm the trial court's dismissal. After three attempts, it was clear that plaintiff could not state a claim for legal malpractice. I think it's also clear that they couldn't state a claim under any alternative theory as well, but plaintiff insists that his four corners of his complaint sounded legal malpractice. Is there, when you look at the rule about conflict of interest, is it limited to simply, you know, if I represented a potential opponent of yours in a previous proceedings, I want you to know that, or does it, is it broader than that? I'd say conflict of interest in this case, in the context of this case, and how it should have been plotted in this case, could be broader than that. If you plead that there was a conflict between the products that Mrs. New offered, because she wanted a, there was a higher commission she could have, she could have obtained on this product, so she offered this product rather than, you know, the product from Principal Life Insurance Company, which fulfilled the client's needs and was probably a better, a better deal. So the fact that the complaint doesn't say the only policy presented was Alianto, the only policy presented was the other one, and I can't remember the name, has, creates a problem. Well, I think it does with respect to proximate cause and breach of duty, absolutely. I think you need to plead those facts if we're moving away from the attorney-client relationship, because obviously we don't think there's sufficient facts to establish the attorney-client relationship. But if you're moving beyond that to the other elements, absolutely. I think there needs to be additional facts alleged in the complaint that ties up the conflict, ties up what it was that she did and how it damaged the plaintiff. I'm assuming that your client, in whichever capacity she's operating, makes appointments with her clients. So if the, if there is some evidence that on the day Mr. Johnson came in, he was booked as a estate planning client, would that be, he was there for an estate planning appointment, would that be, would that be some evidence of legal versus financial, legal versus insurance, or would it have to be more specific than that? I would say it would have to be more specific than that. And in this case, there's no evidence of her providing any estate planning. I know there was argument on that, but on the four corners of the complaint, that's not alleged. Financial planning is alleged. Financial planning could be her wearing her hat as an insurance producer. It's also alleged in the complaint that she was an insurance agent. Plaintiff doesn't allege that he didn't know she was an insurance agent. He alleges that she didn't know she was going to get a commission. But he doesn't allege, he didn't know she was an insurance agent. He doesn't allege that she provided financial estate planning services. He alleges on that particular day, or this is Justice Jorgensen's issue, when is it, there's a continuing relationship because he comes back and adjusts his will periodically and changes things, or is it on that particular day of sale or transaction? That there has to be an attorney-client relationship. I think there has to be an attorney-client relationship on that particular day. What you have in the complaint, what they do, I think it's paragraph 6, he alleges, you know, it was at the time that I was at this closing that she, you know, she was representing me at this closing and she convinced me to purchase an insurance product. They don't take it the next step and say, you know, I purchased the insurance product and we had an attorney-client relationship because she was advising me that I needed to redo my wills, that I needed to put money in a, you know, in an irrevocable trust and that life insurance was the best way to do this. There's none of that alleged in this complaint. I mean, you cannot, there's a disconnect between the legal services that were rendered in connection with the sale of this product. And if you read the complaint, the four corners of the complaint, I think you come away with the conclusion, I know we did, and I think the trial court did, that this is a claim for producer negligence, or a claim based on misused conduct as an insurance agent based on the four corners of the complaint. But it's not, again, I want to be clear, it's not sufficiently stated in that respect either because it's factually deficient in respect to duty breach damages. Can you respond to counsel's argument that only ultimate facts need to be proved and that under the guise of legal advice is sufficient notice to view factually in this complaint? I can tell you it wasn't. I mean, we had no idea. Under the guise of legal advice, is this the real estate legal advice? Is this the divorce real estate advice? My client, and this goes beyond the four corners of the complaint, provided financial planning services or sold her client an insurance policy as an insurance agent. You can wear different hats as an attorney. And again, there's nothing in the complaint that says, I didn't know she was acting as an insurance agent. In fact, there's nothing in the complaint that says, I believe she was acting as my attorney, not as an insurance agent. Well, the comment is, or the statement in the complaint is, under the guise of legal advice, she sold me this policy. So that is telling you that, in his opinion, he was getting legal advice when he was told to buy this policy or asked to buy this policy. I understand. I'm sorry. I think there needs to be more specific facts to tie that up. What legal advice? I mean, I think that's a conclusion. I think that's a broad conclusion. I don't think it's a factual statement. I think we're kind of spiraling here over what is a conclusion or counsel's argument under claim. He only has to plead ultimate facts to be proved. To me, ultimate facts to be proved very well could be just a conclusion. I don't know. How do you read those two together? I think you need to plead something more than the blanket statement that she was providing legal advice, especially in a complaint where you're alleging that she was an insurance producer and you knew she was an agent and you define the other areas of practice that she gave you legal advice in. I think to state a claim for legal malpractice, you have to link up the legal services that were provided with the breach. And I don't think they do that here. I think it's this court's case, Claim v. Landry, which was cited by plaintiff's counsel. Claim for legal malpractice must demonstrate that the attorney breached his duty to provide adequate legal representation. What is that legal representation? What was it? And similarly, in the suppressed v. suppressed case by the first district, and I believe the second district had a similar case, the breach has to be more clearly linked to the attorney's representation. And in this case, I don't think they allege the facts necessary to make that jump. I don't think that there's sufficient facts in the complaint that show that she was selling him these insurance products, these investment products, in connection with legal representation or legal advice. Well, you obviously brought the motion to dismiss, and counsel's position is that, well, that information would be better in your hands, and you could confirm or refute that information through discovery. Why can't we get to discovery here so that the actual issues can be identified? Because the complaint's deficient on its face. And if we want to move past the attorney-client relationship, I'm happy to do that, because I think that the biggest problem of this complaint is the lack of proximate cause. I think that is a summary statement, that the failure to disclose commissions that Joe Blow down the street could have gotten. I mean, there's no allegation that these commissions were out of the ordinary, that somebody else wouldn't have made the same amount of money in selling this product. There's no allegation that he would not have known the truth of the misrepresentations that were made. He would not have purchased this policy. Well, they weren't misrepresentations. His allegation is no representation. No, the other part of his complaint are based on purported misrepresentations that apparently knew, orally advised him that there were not caps on profits and the policy would never make less than 7 percent, and there was one other issue that presumptively is in the clear terms of the policy itself. But, again, even if you look at those bland and blanket allegations, there's no, and I know counsel argues this is a legal now case, so I don't have to prove, I don't have to plead the who, what, where, when, and how, but that's lacking in this case, too. And there's a disconnect between the damages that were proximately caused, or I'm sorry, there are no facts that speak to the proximate cause of his damage. There's no allegation that he didn't make, that he lost money. There's no allegation that he claims that the commissions were, you know, the fact that she's paid commissions was a damage to him. He didn't pay those out of his pocket. There's no, again, there's no allegation that somebody else, this wasn't just a standard commission on a product that was suited for his interests. There's no allegation that there were better products out there that she should have directed him to. So I think the, you know, the biggest problem this complaint had, the first time, the second time, the third time we read it, and then again while I was preparing for this appeal, is that there are absolutely no facts at all that speak to the issue of proximate cause. I know counsel argues that, you know, the substantial factors test should be applied. I don't think it may, I would disagree with that. I would think it's the traditional but-for causation, but the bottom line is you still have to plead facts to support the connection of proximate cause. You know, for those, counsel, the cases that counsel cites, I think also cited the Metro case, you know, case law, that case makes clear that Planoff has to plead facts that demonstrate that had these undisclosed risks been known, that Planoff would not have accepted the risk, would not have consented to the recommended course of action, and this is how he was damaged because of that. You know, none of those facts are in the complaint. They had three opportunities. They had ample time. They had discussions with the court, discussions with counsel, what was in our brief, and the amended complaints essentially said the same thing over and over again. So we think that, you know, there's no question that the complaint on its face did not state a claim for legal malpractice. Similarly, to the extent that you look outside of the legal malpractice claim, I don't think it stated an alternative claim for relief either that would have allowed him to go back out and try to replead a claim for producer negligence. Any other questions? No, thank you. Thank you very much. Do you wish to reply? Please. Regarding the issue of the ultimate facts, scoring is a legal malpractice case. It says no pleading is defective in substance if it contains facts which reasonably inform the opposing party of the nature of the charge to be answered. Reasonably informed. I cited a claim which was before this court. The plaintiff is only obligated to plead those ultimate facts necessary to state a cause of action and to inform the defendant of the nature of the claim brought against him. Now, that's a claim citing the Supreme Court case of Adkins v. Sarah Bush Lincoln. We have pled the ultimate facts. Now, as far as the substantial factors test, that's the Supreme Court of Thacker. And Thacker adopted the restatement second of torts and adopted the substantial factors test. As far as damages, well, the plaintiff profited, excuse me, the defendant profited by the commissions the defendant lost. If you look at the complaint, it actually says that the initial policy sold to her under legal advice failed. Sold to him under legal advice failed. He forfeited fees. I'll grab the complaint and show you. I think it's paragraph 9 and 10. Paragraphs 9 and 10. He forfeited and then she sold him another policy where he ended up losing on that. So she's profiting from the sales and yet he's losing from what she's selling him. But is he losing money because she didn't tell him that she got a commission or is he losing money because of a defective product for whatever reason? He's losing money from the defective product. But at the same time, at the same time, she's gaining money, which is a breach under the conflicts under the disciplinary rules of attorneys, under the DRs, which we cited. It's twofold. That had to be disclosed. To me, and then I'll summarize with this. To me, the whole case turns, and I know we're getting into details of the complaint and it is the four corners of the complaint. This to me, though, really turns on whether a complaint can be brought for conflict when the conflict is not disclosed and the attorney profits. Because to me it's a clear conflict, just basic elementary ethics here. When somebody walks into your office and says, okay, we're going to do this, but I have an interest. I have a personal interest. Is it reasonable to assume that if you went into, I'll just pick State Farm, and you bought an insurance policy, that that agent is not getting a commission? Is that a reasonable assumption to make? That they are not getting a commission? Right. No, that's not reasonable. Okay. So why would it be reasonable to assume in the light of a specific allegation to the, or disclosure to the contrary, that Ms. New was not making a, some commission on the sale of an insurance policy? I don't care if she was or wasn't, and I'm not avoiding your question. Let's say we assume she was. She has a duty to disclose that. She has a duty to disclose that. Carry your thought process farther. Carry that farther and say she sold in junk bonds, which were going to be no good, and she was going to make a profit off of that. Or a lousy annuity. That's a legal term of art, lousy. But a very poor annuity, which she knew was going to be no good, and she was going to profit from. There was never an allegation in your complaint that she knew this policy was no good. Absolutely right. There is not. But as the proof showed, proof in the pudding showed later on, it was. He lost money on the first one. She sold him another one, and she profited. But the issue is whether or not she told him she was making a profit on it or a commission or a fee. Profit or selling a product which should have been disclosed. To me, it's very simple, and I know we're, and I understand your position. But that's why attorneys say, okay, you need to get another opinion on this. Go find someone else to sell you potentially a secondary product. There's a higher standard, a higher duty, which we quoted in the brief from the Supreme Court in another case. There's a higher fiduciary duty involved here once she has become his attorney. And I said in here, I went back and checked while the other attorney was arguing, that she had been handling financial matters for Mr. Johnson at the time of the sale of the second product. She had been acting in an attorney-client relationship. That puts into force the higher fiduciary duty where you can sit there and fully dispose in writing, which is what the D.R. is called for, or say, I'm telling you this. Get another opinion from another salesperson who may sell insurance. Do you allege that if he knew she was making a commission on this, that he would not have purchased the policy? No, I do not allege that in the four corners of the complaint. Where's your approximate cost? The approximate cost comes from the sale of a substantial factor test now under Restatement Second of Tories. Was that sale of that product, which she knew or did not know going forward in discovery, that was going to be beneficial or not, that she would have to sell and he would have to recoup, lose the investments that he had. He would lose those investments that he had. She's selling the product, which leads to his loss. Right, but her negligence here, the breach of her duty, is her failure to tell him, I'm making a profit on this or I'm making a fee on this. Her negligence is also, in addition to that, among the seven breaches I listed, all right, not just one, but among the seven is by not telling him there are other products out there you can choose from in that vein where you may or may not lose. Her conduct led to his loss is what the allegation is. Her conduct was a substantial factor in his loss, which is different, vastly different from but for, the traditional argument. The substantial factor test, the Supreme Court stated in fact, in Thacker, is specifically made for financial matters like this, not where you blow a statute on a statute of limitations in a PI case or something of that nature. But from the complaint, we don't know that she didn't offer other options. You're right, from the complaint, we don't. All we're saying is, and this goes to Justice Burke's question about discovery, going forward with discovery, excuse me, I think you also asked that, going forward with discovery. I argue in the trial court, once we get the full facts here, this is a matter for expert opinion. But later on, by other attorneys retained to Senator 213F3 saying, was that a breach or not? Did that breach lead to these damages? By expert opinion. But when you make that allegation, don't you have some obligation to know whether or not there's some basis for that? I think we plan the ultimate facts necessary under the case law. Just like, as I said before, in any, I don't think, I think you have to tweet. If anything, this would survive, in my opinion, a medical malpractice claim if we put it in medical malpractice terms. But to be honest with attorneys, with attorneys, there's an affidavit there. There's something else that occurred, and you're required to have that affidavit. Totally agree with you. However, in this situation, because the duty is higher, it's a fiduciary duty, not just a general duty. It's a fiduciary duty of the attorney involved. It's that higher standard, which we've quoted in all case law gun light holes. Because of that higher standard, that conflict exists, and you have to give notice to the other, to your client in that regard. You can't proceed if you suspect, if you have any inclination there is a potential conflict. That's the rule that we were all taught. If there's a potential conflict, there's the disclosure, which led to, was a substantial factor in the damage. That's the argument. That's all I have unless you have any questions. Wait a minute. You just said substantial factors that led to the damages? Yes. Your argument is not that substantial factors is an analysis for proximate cause. It is. Substantial factors is proximate cause. I mean, that was their Supreme Court's definition, adopting the Restatement Secondary Torts for proximate cause in financial matters. That's the Thacker case. Okay. Any final remarks? No. Thank you very much. Thank you.